IN RE INTEREST OF KINDRA S., A CHILD
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
V. TAMMIE S., APPELLANT.
705 N.W.2d 792

Filed November 15, 2005. No. A-04-1443.

Donald J. Tedesco for appellant.

Paul B. Schaub, Cheyenne County Attorney, for appellee.

William C. Peters, guardian ad litem for appellant.

Richard H. Jensen, guardian ad litem for Kindra S.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Tammie S. appeals from the order of the Cheyenne County Court, sitting as a juvenile court, which terminated her parental rights with regard to her daughter, Kindra S. Tammie alleges that the court erred in finding that her parental rights should be terminated, in overruling a motion in limine, and in failing to admit into evidence a statement of a former caseworker. We find that the State proved by clear and convincing evidence the grounds for termination of Tammie's parental rights under Neb. Rev. Stat. § 43-292(7) (Reissue 2004). Given the facts of this case, Tammie's incarceration or hospitalization in a mental health facility should not be excluded from the court's calculation of Kindra's time in out-of-home placement under § 43-292(7). We find that termination of Tammie's parental rights is in Kindra's best interests. Additionally, we find that the court did not err in overruling the motion in limine or in failing to admit into evidence the former caseworker's statement, since the Nebraska Evidence Rules are not applicable in cases involving the termination of parental rights and the evidentiary rulings comported with due process. Accordingly, we affirm.

## II. BACKGROUND

These proceedings involve the termination of Tammie's parental rights with regard to Kindra, who was born on February 7, 2000. Kindra spent her first 13 months with Tammie. In February

2001, Tammie threw a brick or stone through a window of her father's home. Due to this incident, Tammie was arrested and subsequently extradited to Texas pursuant to an outstanding Texas warrant. She was incarcerated and hospitalized for approximately 14 months in Texas due to mental illness.

As a result of Tammie's absence, the Nebraska Department of Health and Human Services (DHHS) took legal custody of Kindra on February 27, 2001. Kindra was placed in foster care and has remained in the same foster home since that time.

Soon after the Texas authorities released Tammie, she returned to Nebraska. Here, she began working with DHHS in an effort to begin visitation with, and ultimately regain custody of, Kindra. The goals of the case plan that Tammie was required to complete were to "participate in psychotherapy[,] remain stable on her medications[, and] continue to display no physical aggression." As of June 2002, in accordance with a visitation plan, Tammie was permitted supervised visitation with Kindra.

Subsequently, Tammie spent a period of time—described by various witnesses as between 6 and 9 months—in the Hastings Regional Center. While there, she was permitted biweekly telephone visitations with Kindra.

After Tammie left the Hastings Regional Center, DHHS provided Tammie in-person visitations with Kindra every other week for a period of time. These visitations were progressively increased to three times a week. In June 2004, visitations were suspended due to the DHHS caseworker's concerns about Tammie's erratic behavior and the resulting impact on Kindra's safety. Such concerns were based on Tammie's noncompliance with taking her medication and on her cessation of psychotherapy.

On April 1, 2004, the State filed a petition to terminate Tammie's parental rights, as well as the parental rights of Kindra's father, who is not involved in this appeal. The petition alleged that Tammie's parental rights should be terminated as a result of her inability to discharge parental responsibilities due to mental illness or mental deficiency which is likely to continue for a prolonged indeterminate period. The petition also alleged that Kindra had been in out-of-home placement for 15 or more months of the most recent 22 months and that termination of Tammie's parental rights was in the best interests of Kindra.

Guardians ad litem were appointed for Tammie and for Kindra pursuant to Neb. Rev. Stat. § 43-292.01 (Reissue 2004). A hearing was held on the State's petition to terminate parental rights on August 5, 2004. Due to the presiding judge's death on August 8, Tammie filed on August 16 a motion for new trial, which motion was granted.

On September 20, 2004, and before the new hearing on the termination of parental rights, the State filed a motion to take the trial deposition of an examining psychologist, Dr. Anne Talbot. On November 9, Tammie filed a motion in limine requesting that the court determine whether Dr. Talbot's deposition could be received into evidence at the ensuing termination of parental rights hearing. The court ultimately overruled the motion.

The new hearing on the termination of parental rights was held on November 17, 2004. On December 8, the court entered an order terminating Tammie's parental rights. In that order, the court determined that termination of Tammie's parental rights was proper according to § 43-292(5) and (7) and was in the best interests of Kindra. The court relied, inter alia, on testimony from two psychologists, Drs. Daniel Scharf and Talbot, as well as the then-current DHHS caseworker assigned to the case. Their testimony revealed that Tammie's behavior had continued to be adverse to the best interests of Kindra.

Testimony established that Tammie had received several forms of assistance from DHHS staff but had been unable to meet the goals of the rehabilitation plan over a span of nearly 3 years. Tammie had terminated her psychotherapy and was noncompliant with taking her medications. Additionally, testimony from Drs. Scharf and Talbot indicated that a high risk of harm to Kindra would be likely were she to be returned to Tammie's care. Dr. Scharf testified that such placement would insert Kindra into a chaotic environment where she would be exposed to violent behavior and a lack of parental care. Dr. Scharf expressed concern that Kindra might become the target of Tammie's mood volatility. Furthermore, the DHHS caseworker testified that Kindra had been in out-of-home placement for at least 15 of the most recent 22 months before the filing of the petition to terminate.

The court noted that while Tammie might be in a position to parent Kindra after another 2 to 3 years of diligent and consistent

treatment to improve her mental condition, Dr. Scharf had indicated it would be highly unlikely that Tammie would benefit from services that would help her achieve this end because of her past noncompliance with medications and her substance abuse. The court concluded that the evidence was clear and convincing that Tammie's conditions would continue for a prolonged and indeterminate period of time. As such, the court found that it was in the best interests of Kindra to terminate Tammie's parental rights. Tammie now appeals to this court.

## III. ASSIGNMENTS OF ERROR

Tammie and her guardian ad litem have filed separate briefs, and each brief contains assignments of error. Tammie and her guardian ad litem assert, combined and restated, that the county court erred (1) in finding that the State proved by clear and convincing evidence that Tammie's parental rights should be terminated, (2) in overruling the motion in limine, and (3) in failing to admit into evidence the statement of a former caseworker. Tammie also assigned error regarding termination of her parental rights based on § 43-292(5). Given our disposition below, this assigned error need not be addressed.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code, and specifically an appeal from an order terminating parental rights, shall be reviewed de novo on the record, and an appellate court must reach conclusions independent of the trial court's findings while disregarding impermissible or improper evidence. See *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004).

Clear and convincing evidence means and is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proven. Further, clear and convincing evidence is more than a preponderance of evidence, but less than proof beyond a reasonable doubt. *In re Interest of Brettany M. et al.*, 11 Neb. App. 104, 644 N.W.2d 574 (2002).

█ In proceedings to terminate parental rights, the Nebraska Evidence Rules do not apply. See *In re Interest of Brettany M. et al., supra*. The requirements of due process control in determining the type of evidence which may be used by the State in an attempt to prove that parental rights should be terminated. The question becomes whether the evidence is relevant based upon the broad concerns of juvenile proceedings, with the Nebraska Evidence Rules serving as a guidepost. *Id.*

█ In termination of parental rights cases, due process requires that fundamentally fair procedures be used by the State in an attempt to prove that a parent's rights to his or her child should be terminated. *In re Interest of Rebecka P.*, 266 Neb. 869, 669 N.W.2d 658 (2003).

### 2. TERMINATION OF PARENTAL RIGHTS

#### (a) Statutory Grounds

Tammie argues that the statutory grounds under § 43-292(7) for termination of parental rights were not proven by clear and convincing evidence. Specifically, she argues that periods of Kindra's out-of-home placement during the 22 months preceding the filing of the petition to terminate parental rights included periods of time Tammie was incarcerated or in mental health facilities and that such periods of time should be excluded when calculating whether Kindra was in out-of-home placement for 15 of those 22 months. Tammie cites to no case law in Nebraska which supports her argument that the time of incarceration or hospitalization should be excluded from calculating the time period of Kindra's out-of-home placement, and our research reveals none. We disagree with her argument given the facts of the case.

█ The Nebraska Juvenile Code specifically calls for the satisfaction of two requirements before termination of parental rights is proper. First, the code requires the existence of 1 or more of the 10 statutory grounds for termination of parental rights described in § 43-292. Second, the code allows the court to terminate parental rights when the court finds such action to be in the best interests of the juvenile. § 43-292. Section 43-292(7) specifically provides that termination of parental rights is appropriate if "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months."

That part of Tammie's argument regarding the exclusion of periods of incarceration is one previously made and addressed by Nebraska jurisprudence in the context of § 43-292(1). Section 43-292(1) provides that a court may terminate parental rights if "[t]he parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition." Nebraska jurisprudence concludes that despite the fact that a parent has been incarcerated for all or part of the 6-month period used to prove abandonment, the period of time of the parent's incarceration may be considered in reference to abandonment as a basis for termination of parental rights if certain other matters are proven. See *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992).

At this point in our analogy, § 43-292(1) and (7) diverge, because Nebraska appellate courts have concluded that " ' "[a]bandonment," for the purpose of § 43-292(1), is a parent's *intentionally* withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and opportunity for the display of parental affection for the child.' " (Emphasis supplied.) *In re Interest of L.V.*, 240 Neb. at 419, 482 N.W.2d 250 at 260 (quoting *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990)).

Nebraska appellate courts have concluded that for purposes of § 43-292(1), abandonment is an intentional act as defined by law in Nebraska and the parent's act of abandonment must be voluntary, i.e., intentional. The impact of this intent requirement means that periods of time used to calculate the 6-month period of abandonment can be included only if the actions that gave rise to the abandonment were voluntary. If such is found to be the case, the time spent while being incarcerated can be used in the determination of whether the 6-month requirement has been satisfied.

However, § 43-292(7) does not require that the child's out-of-home placement be the result of any intentional act on the part of the parent. In fact, the Nebraska Supreme Court has held that § 43-292(7) operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). In

a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests step of the analysis. Yet, when termination of parental rights is based on the ground described in § 43-292(1), the protection of the parent's rights is analyzed not only in the best interests analysis, but is given additional scrutiny with the added requirement that the abandonment be intentional and not a mechanical operation of counting months. In both situations, however, the time that a parent spends incarcerated or hospitalized can be included in the required time calculations to determine whether the statutory ground has been proven.

Given the facts of this case, it is our conclusion that a finding of statutory grounds for termination of parental rights under § 43-292(7) is a mechanical arithmetic matter. The proper application of this subsection consists of counting the most recent 22 months preceding the filing of the petition to terminate parental rights, followed by counting how many of those 22 months the child was in out-of-home placement. If the child was in out-of-home placement for 15 of those 22 months, the statutory grounds for termination of parental rights are satisfied and termination of parental rights is appropriate, subject to a determination that such termination is in the child's best interests.

The record shows that Kindra was placed in the custody of DHHS when she was approximately 1 year old. At the time of the hearing on the termination of parental rights, Kindra was 4 years 9 months old and had continuously been in out-of-home placement since being placed in the custody of DHHS. During the time Kindra was in out-of-home placement, Tammie had been either incarcerated or in mental health treatment in Texas for approximately 14 months and had been in the Hastings Regional Center for approximately 6 to 9 months. However, Tammie was never incarcerated or hospitalized in Texas during the most recent 22 months of the date of filing of the petition to terminate parental rights.

Tammie's hospitalization in the Hastings Regional Center did occur during the most recent 22 months of the filing of the petition to terminate her parental rights. Given our conclusion above, the time Tammie was in the Hastings Regional Center need not be excluded from the court's determination of whether Kindra

was in out-of-home placement for 15 of the 22 months immediately preceding the petition to terminate parental rights.

We find that the statutory grounds for termination of Tammie's parental rights were proven by clear and convincing evidence. Under the facts of this case, there is no exception under § 43-292(7) for Tammie's incarceration or hospitalization in mental health facilities for the purpose of determining Kindra's time in out-of-home placement. Compare *In re Interest of Dylan Z.*, 13 Neb. App. 586, 697 N.W.2d 707 (2005) (finding that father's parental rights were wrongly terminated where fundamental fairness was lacking). This assigned error is without merit.

In light of these findings, no review of the county court's ruling with regard to § 43-292(5) is required. See *In re Interest of Brittany S.*, 12 Neb. App. 208, 670 N.W.2d 465 (2003). Because we conclude that the State sufficiently proved the existence of statutory grounds for termination of Tammie's parental rights, we find this assignment of error to be without merit.

### (b) Best Interests

Tammie argues that the court erred in finding that terminating Tammie's parental rights is in Kindra's best interests. We find that the State proved by clear and convincing evidence that such termination was in Kindra's best interests because of Tammie's inadequate response to the treatment of her mental illness and because of her volatile behavior that could place Kindra at risk.

Section 43-292 specifically requires that in a proceeding for termination of parental rights, the court must find such termination to be in the child's best interests. This requirement ensures that there are ample safeguards in place to ensure that termination of parental rights is not based solely on the duration of out-of-home placement. See *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003).

The testimony of the two evaluating psychologists demonstrates that Tammie suffers from mental illness. Dr. Scharf diagnosed Tammie with disorganized schizophrenia. Dr. Talbot diagnosed Tammie with "a significant major psychiatric disorder that incorporates schizophrenia and a personality disorder, as well as an additional diagnosis that impacts on her ability to deal with her

other psychiatric diagnoses; and that is the diagnosis of border-line intellectual functioning." By itself, this prognosis does not preclude a person from parenting a child. However, other factors must be considered in Tammie's case.

An underlying factor that weighs heavily in the best interests analysis is Tammie's unwillingness to fully acknowledge both the seriousness of her symptoms and the need for treatment. Based on Dr. Talbot's evaluations of Tammie and review of her history, she opined that Tammie has a limited awareness of the seriousness of her illness and that Tammie downplays her condition, which could place both Tammie and Kindra at risk.

Dr. Scharf testified that Tammie has expressed ambivalence about the need for her medications and about whether she was schizophrenic or not. He testified that in June 2004, Tammie admitted that "she was not taking her medications, that she said that she had flushed them down the toilet, [and] that she believed that she did not need them." In addition to not taking her medications, Tammie had been using marijuana and drinking alcohol, which, according to Dr. Scharf, "would be very detrimental to her mental health. It probably would exacerbate her psychotic symptoms and probably exacerbate her mood difficulties also."

Tammie testified that she would take her medication if she "felt like taking it." On one occasion, Tammie left the doctor's office, after waiting 15 minutes, without having received her dosage of medication because she saw "no need to sit around." Tammie missed another appointment with the doctor to receive medication because she was otherwise occupied.

These behaviors support Dr. Talbot's statement that Tammie does not acknowledge both the seriousness of her condition and the need for treatment of the condition. Dr. Talbot indicated that Tammie had "an unrealistic perception of the impact of her psychiatric history and the impact that had, not only on her, but on her daughter."

Tammie had also been inconsistent with psychotherapy treatment, which treatment was one of the goals set forth in her case plan. On July 6, 2004, Tammie indicated to the DHHS caseworker that Tammie refused to see her psychotherapist. On July 20, Tammie called her DHHS caseworker and said that she re-fused to see her counselor; subsequently, Tammie did not make

an effort to go to a different counselor. Tammie had repeatedly been reminded of the conditions of her psychological evaluation that called for her to be on medication and to be stabilized before visitation with Kindra would be possible.

Dr. Scharf testified that there are mothers with schizophrenia who are capable of parenting. He also maintained that Tammie's type of disorganized schizophrenia can be controlled by medication. However, Tammie's inadequate response to her need for treatment is not in the best interests of Kindra.

 Similarly, Dr. Talbot testified that aspects of Tammie's condition could be mediated by medication but that Tammie "ha[d] not demonstrated a pattern of maintaining stabilization or cooperation with treatment recommendations consistently." While Tammie should not be punished for her illness, it is the juvenile's best interests that are of primary consideration in determining whether parental rights should be terminated. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005); *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002).

Tammie's noncompliance with taking medication and her failure to regularly attend psychotherapy have resulted in very aggressive and threatening behavior at times. Tammie has made threats against others. She threatened Kindra's foster father that she would either get a gun or train her dog to kill him. On June 2, 2004, Tammie threatened DHHS staff that she would get a gun from her father and use it if anyone touched Kindra. On June 28, Tammie threatened DHHS staff that she was going to take a gun and attempt to take Kindra. On July 21, Tammie warned several DHHS staff and a sheriff that they should watch their own daughters. One caseworker indicated that she was afraid because Tammie knew where she lived, and that caseworker expressed concern for the safety of her daughter.

Dr. Scharf administered to Tammie several psychological tests, one of which revealed Tammie was "very active and probably would have difficulty inhibiting her behavior." Dr. Scharf testified that Tammie "scored similar to other individuals that were aggressive, that tended to show aggressive behavior." While this type of behavior may be a symptom of her condition, it is nonetheless not in the best interests of Kindra.

Tammie's behavior is inconsistent with the best interests of Kindra. Her behavior and mental condition have a detrimental effect on her ability to parent Kindra. Dr. Scharf testified that Tammie's mental illness had affected her ability to parent. He reported that Tammie had suffered from functional impairment regarding real life problems, such as making appointments, taking care of hygiene, and working. Her mental deficiency also was shown to affect her ability to parent. Dr. Scharf explained that the intellectual testing which measured Tammie's IQ also measured things such as reasoning, judgment, attention, and concentration—skills necessary to parenting.

Additionally, Dr. Talbot explained that Tammie "has a diagnosis that affects her judgment and reasoning, her ability to reality test, her ability to understand the developmental needs of a child. And she is prone to delusional states and psychotic states that affect her ability to provide a safe environment for a child." Dr. Talbot clarified that in addition to the mental illness diagnosis, Tammie's mental deficiency causes difficulties for her to respond appropriately to treatment, education, and other interventions that might help her overcome or mediate her impaired reality testing or delusions.

Tammie's observed and diagnosed mental health issues have an effect on her ability to parent and, therefore, a direct effect on Kindra's best interests. Dr. Talbot stated that Tammie's responses to a "Parenting Scale" test Dr. Talbot had administered were "overly simplistic, and sometimes inappropriate, in such a way that the situation might be escalated, or place a child in danger." Dr. Talbot relayed that Tammie made inappropriate statements in Kindra's presence which "reflect a real lack of concern for Kindra's psychological state." When asked what impact there would be on Kindra if she were returned to live with Tammie, Dr. Talbot replied, "It could be devastating." Dr. Talbot also explained that it would be nearly impossible for Kindra and Tammie to have a successful reunification. Dr. Talbot stated that Tammie has a serious psychiatric disorder which puts herself, and Kindra, in jeopardy.

Likewise, when Dr. Scharf was asked what impact there would be on Kindra if she were returned to live with Tammie, he replied,

> When I saw Tammie in June of 2004, I think the impact would be that Kindra would live in a pretty chaotic environment, where — I think Tammie would have difficulty providing structure and predictability for Kindra. I think there would be a decent chance that Kindra would be exposed to violence, or threatening behavior, which would be very detrimental to her.

Dr. Scharf also expressed concern that Tammie suffered from mood volatility, of which Kindra could eventually become a target.

Therefore, we find that the State proved by clear and convincing evidence that termination of Tammie's parental rights is in Kindra's best interests. This first assigned error is without merit.

### 3. MOTION IN LIMINE

Tammie filed a motion in limine requesting the county court to determine whether the deposition of Dr. Talbot could be received into evidence. The court overruled the motion. We find that the court did not err, and we analyze the motion in limine in four separate subsections below.

### (a) Objections in Deposition

Tammie asserts that the county court erred in overruling her motion in limine to exclude Dr. Talbot's deposition. Tammie argues that the deposition contained many objections upon which the court was never given an opportunity to rule. Citing to Neb. Rev. Stat. § 27-804 (Reissue 1995) regarding hearsay exceptions, Tammie contends that "[a]n argument could be made that because such trial deposition was not taken and offered in compliance with the law, it is not admissible." Brief for appellant at 15. This argument is without merit because Tammie did not obtain a ruling on any of the objections contained in Dr. Talbot's deposition.

It is a well-known rule that if, when evidence is offered, the opposing party consents to its introduction or fails to object or to insist upon a ruling on an objection to the introduction of such evidence, and otherwise fails to raise the question of its admissibility, the opposing party waives whatever objection may have existed, and the evidence is in the record for consideration the same as other evidence. *In re Interest of E.G.*, 240 Neb. 373,

482 N.W.2d 17 (1992); *In re Estate of Kaiser*, 150 Neb. 295, 34 N.W.2d 366 (1948).

Tammie's counsel made objections to the testimony during the deposition. In the hearing on the motion in limine, Tammie's counsel objected based on *Daubert* and, additionally, on inadequate foundation of the deponent, Dr. Talbot, to render an expert opinion. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The court noted at the hearing that objections were made during the deposition, but at no time was the court asked to rule on them. The court overruled the motion in limine. When the State offered into evidence at trial the exhibit containing Dr. Talbot's deposition, Tammie's counsel renewed the objection from the earlier motion in limine hearing. The court received the deposition nonetheless. As such, the objections contained in the deposition are not properly preserved for appeal.

### (b) *Daubert* Challenge

Tammie asserts that the county court erred in admitting the deposition of Dr. Talbot, because her expert testimony was improperly received by the court. Tammie asserts that Dr. Talbot did not "render her opinion in the appropriate form," essentially arguing that it was not made with a reasonable degree of medical certainty. Brief for appellant at 18. We find that Dr. Talbot's deposition was admissible expert testimony because the *Daubert* standards are not applicable in cases where the Nebraska Evidence Rules do not apply, such as in termination of parental rights cases. See *In re Interest of Rebecka P.*, 266 Neb. 869, 669 N.W.2d 658 (2003).

An expert's opinion is ordinarily admissible under Neb. Rev. Stat. § 27-702 (Reissue 1995) if the witness (1) qualifies as an expert, (2) has an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004).

Additionally, when the expert opinion involves scientific or specialized knowledge, the trial court applies the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra. Robb v. Robb, supra.* Under *Daubert*, the trial court acts as a gatekeeper

to ensure the evidentiary relevance and reliability of an expert's opinion. *Robb v. Robb, supra.*

However, application of the *Daubert* standards for admission of expert testimony is limited to those cases in which the Nebraska Evidence Rules apply. Since this is a case involving the termination of parental rights, and the Nebraska Evidence Rules are not applied in such cases, the *Daubert* standards do not apply to this case. See *In re Interest of Rebecka P., supra.* Thus, this argument is without merit.

### (c) Due Process

Tammie argues that the court erred in overruling the motion in limine to exclude Dr. Talbot's deposition, and Tammie implies that the requirements of due process were not met by the admission of such deposition. We find that due process requirements were fulfilled because fundamentally fair procedures were used.

We have previously recognized that Nebraska Evidence Rules do not apply in cases involving termination of parental rights. See *In re Interest of Brettany M. et al.*, 11 Neb. App. 104, 644 N.W.2d 574 (2002). Tammie correctly maintains that the requirements of due process control in determining the type of evidence which may be used by the State in an attempt to prove that parental rights should be terminated. See *id.* To this end, fundamentally fair procedures must be used by the State. See *In re Interest of Rebecka P., supra.*

The record shows that Tammie received notice of the deposition, she was represented by counsel, and Tammie's counsel cross-examined Dr. Talbot. Therefore, we find no basis on which to conclude that Dr. Talbot's deposition should not have been admitted into evidence. Due process requirements were met, and the admission of Dr. Talbot's expert testimony was proper. Therefore, this argument lacks merit.

### (d) Existence of Reversible Error

We additionally note, sua sponte, that even if Dr. Talbot's deposition was improperly received, such action would not by itself constitute reversible error; a showing of prejudice must be made. See, *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003); *In re Interest of L.H. et al.*, 241 Neb.

232, 487 N.W.2d 279 (1992). Tammie must show that the inclusion of the deposition in the evidence was prejudicial to her due process rights. See *id.*

In the instant case, Tammie does not argue that she was prejudiced; nor do we find any basis on which to conclude that Tammie was prejudiced. We find no reversible error with respect to the motion in limine.

### 4. Statement of Former Caseworker

Tammie asserts that the written statement of a former DHHS caseworker, Stacey Mitlehner, should have been accepted into evidence. However, on our de novo review of the record, we find that the statement was properly excluded and that no reversible error exists. The requirements of due process were comported with, and the judge was within his discretion to exclude the statement.

Tammie offered into evidence the statement of Mitlehner, who was unavailable to testify at the trial. The statement was a written memorandum containing her account of Tammie's history and progress. Both the State and Kindra's guardian ad litem objected to the admission of the statement, based on hearsay. The court sustained the objections.

Tammie correctly asserts that a due process analysis is required concerning the trial court's refusal to admit this evidence. She argues that fundamental fairness would dictate that since the State was allowed abundant hearsay in its case, she ought to be allowed hearsay evidence in her case. However, Tammie offered no explanation for Mitlehner's unavailability to appear, and the State was given no opportunity to cross-examine the witness. Tammie's attorney explained only that he "couldn't get [Mitlehner] to come in."

Additionally, the Nebraska Evidence Rules provide a guidepost in determining whether admission or exclusion of particular evidence would violate fundamental due process in termination of parental rights cases. See, *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998); *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992).

To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial

right of a litigant complaining about such evidence admitted or excluded. *Henke v. Guerrero*, 13 Neb. App. 337, 692 N.W.2d 762 (2005). See Neb. Rev. Stat. § 27-103(1) (Reissue 1995).

In the instant case, the substance of the excluded evidence was made known to the trial court pursuant to § 27-103(1)(b), and the court was within its discretion to determine relevancy and admissibility of the evidence. As such, we find no substantial right was unfairly prejudiced by the exclusion of the statement.

Additionally, Neb. Rev. Stat. § 27-403 (Reissue 1995) provides that relevant evidence may be excluded if there is "needless presentation of cumulative evidence." The statement of Mitlehner was cumulative in the sense that the court had already heard evidence on Tammie's history and progress. This assignment of error is without merit.

## V. CONCLUSION

Upon a de novo review of the record, there is clear and convincing evidence that termination of Tammie's parental rights is proper pursuant to § 43-292(7) and is in the best interests of Kindra. No due process rights were violated in the overruling of Tammie's motion in limine or in the court's admission of Dr. Talbot's deposition. No due process rights were violated when the court excluded the statement of Mitlehner, the former caseworker, and no prejudicial error resulted from such exclusion. The county court's order terminating Tammie's parental rights with regard to Kindra is affirmed.

AFFIRMED.