IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

IN RE INTEREST OF CARLOS G.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF CARLOS G., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CELIA R., APPELLANT.

Filed March 2, 2021.    No. A-20-553.

Appeal from the County Court for Hall County: ALFRED E. COREY III, Judge. Affirmed.

Grady C. Erickson, of Mayer, Burns & Koenig, for appellant.

Garrett L. Schroeder, Deputy Hall County Attorney, and Rene Blauhorn and Neleigh N. Boyer, of Nebraska Department of Health and Human Services, for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Celia R. appeals the order of the Hall County Court, sitting in its capacity as a juvenile court, requiring her son's case plan to include intensive family preservation (IFP). For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

In April 2019, the Nebraska Department of Health and Human Services (DHHS) received an intake regarding excessive school absences by Celia's minor son, Carlos G., during the 2018-19 school year. In August, the Hall County Court, sitting in its capacity as a juvenile court, issued an order finding that Carlos came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) due to the fault or habits of Celia and that Celia neglected or refused to provide necessary

- 1 -

subsistence, education or other care necessary for Carlos' health, well-being, or morals. In reaching that determination, the county court found Carlos' school attendance history, his grades, and Celia's failure to work with school officials to address Carlos' absenteeism problem were sufficient facts to support its determination that Carlos was a child within the meaning of § 43-247(3)(a). This court affirmed the county court's order adjudicating Carlos. See *In re Interest of Carlos G.*, No. A-19-804, 2020 WL 1487715 (Neb. App. Mar. 24, 2020) (selected for posting to court website).

After this court affirmed the county court's order adjudicating Carlos, the county court held a dispositional hearing on July 15, 2020. Charyssa Winkler, a DHHS child and family services specialist, was the only witness who testified at the hearing. At this hearing, the court received into evidence certain exhibits including a June 3 DHHS court report; a July 7 DHHS case plan, which referred to the June 3 court report; and a May family strength and needs assessment report. The court also admitted into evidence several other earlier case plans prepared by Winkler; however, the only case plan and court report at issue on appeal is the June 3 court report and the July 7 case plan. The July 7 case plan recommended 9 strategies for Celia including strategy 9 which stated that "Celia and her family will participate in IFP services . . . and then transition to Family Centered Therapy when a spot becomes available for the service."

Winkler testified that she has been the ongoing caseworker for this case since the end of May 2019. In deciding what to recommend in the case plan, Winkler testified she performs a family strength and needs assessment which assists her in assessing the reason or reasons why a family was assigned to her and to assist her in formulating strategies for the family. Winkler testified that she had previously performed the family strength and needs assessment with hundreds of families.

Winkler explained that while performing a strength and needs assessment, she speaks with the family and asks them various family background questions including prior substance use, mental health issues, coping skills, parenting skills, resource management, physical health, and living conditions. Winkler then enters the information she received from the family and her own observations into the assessment "tool," and based off that information, Winkler testified, "it will provide a list of recognized needs or strengths for the family." Winkler testified that she was involved with Celia's family before the adjudication, that she remained with this family throughout the case, and that she had performed four assessments with the family, the most recent of which was performed on May 4, 2020. Based on the results of the May 4 assessment, which determined the family's recognized needs and strengths, Winkler submitted a court report on June 3 and submitted a case plan on July 7. In the July 7 case plan, Winkler recommended both IFP and Family Centered Therapy (FCT) for the family.

Winkler testified that IFP is a 6-week program that involves bringing a "skill builder" and therapist into the home to work with the family. Winkler recommended IFP for the family because the risk assessment showed the family needed assistance with coping skills, mental health, and the parents' physical health. Winkler stated that, "[w]ith the IFP, they can help the family with creating routines to help alleviate the concerns [of] why we have this case, as well as with the therapy piece of it, potentially get to the underlying issues of why exactly we have this case," such as why Carlos had difficulty going to school or staying in school. She testified the IFP can help prepare a

> game plan of what it will look like when Carlos is in school, what time he will go to bed,
> what time he'll wake up, how he will get to school, if he does have any more concerns with

. . . bullying, what they plan to do about it. Pretty much just preparing themselves for the upcoming school year so that we don't have the same repeated concerns as the previous school year, which is why we have the case.

However, Winkler also admitted that, generally speaking, DHHS guidelines provide that IFP is for families who have identified safety threats or are at risk of initial out-of-home placement or families who have had their children removed within the last 90 calendar days and the plan is reunification. Winkler testified that based upon her review of the initial risk assessment, Carlos was not considered an active safety threat warranting removal from Celia's home and Carlos had never been removed from Celia's home.

Winkler testified that the July 7, 2020, case plan also recommended that the family participate in the more intensive FCT when a spot became available. Winkler explained that FCT is a 6-month evidence-based program providing intensive in-home treatment service for youth and families using psychotherapy designed to reduce maltreatment; improve caretaking and coping skills; enhance the family's resiliency; develop healthy and nurturing relationships among family members; improve the child or children's physical, mental, emotional, and educational well-being through family value changes; and help change the needs or the concerns that brought the family to DHHS' attention.

Winkler testified that she talked to the family about how parenting skills might relate to Carlos' excessive school absences which she included in the family strength and needs assessment. Winkler explained that she

> [s]poke with Celia, since she also knows that [Carlos had] the history of excessive absences with the previous school year, since I received the case last summer. We talked about how to . . . ensure that [Carlos] does better in the upcoming school year with getting to school. And speaking with [Celia] like, what her plans are to ensure he does attend. And she would tell me things about [how] she will take him to school every day. If she cannot take him for some reason, she will find an alternate person to do that. If Carlos were to need to miss school, she knows that she needs to get appropriate documentation for that, which she did do . . . throughout the school year when he was sick a few times. And as well as if there is anything else that could potentially be hindering getting Carlos to school, what things I could do to help her with getting him there.

Winkler testified that she believed that her case plan and court report was the best thing for Carlos going forward.

On cross-examination, Winkler stated the only other service that she was aware of in which the family could potentially participate was Family Support Services (FSS). She described FSS as the lowest support service which involves a "skill builder" that comes into the family home for about 4 hours per week to work with the family to identify and address their strengths and needs. Although Winkler recommended FSS in her first case plan and court report, she explained she did not recommend FSS in the July 7, 2020, case plan because

> [t]he family did participate in [FSS] the previous summer. In 2019 they had that service in place for a period of two months. However, during that two month timeframe, Celia and the family only met with the worker twice, and it was either at the public library or in the

public park. And when I would receive updates or progress notes from the worker who was assigned to their case from the agency, they informed me that they were not making any progress towards the goals that they created and they had a lot of [difficulty] getting ahold of Celia. And at that point, they withdrew the service.

Winkler admitted that the family's prior participation in FSS was voluntary. She further explained that IFP and FCT can accomplish the same objectives as FSS.

Winkler explained that FSS, IFP, and FCT, directly related to helping Carlos get to school by

help[ing] with creating a routine to get [Carlos] to school, . . . making sure he goes to [bed] early, he gets up on time to get ready, making sure that he has appropriate transportation to get [to school], [and] if he has issues during school with other students, how he can get those issues addressed.

In a journal entry dated July 15, 2020, the court adopted the July 7 DHHS case plan with the provision that the "case plan is modified to only include IFP (condition #9)." The journal entry further provided that provisions of the July 7 case plan "were reasonably material to the rehabilitation objective of eliminating the situation or condition for which the adjudication ha[d] been obtained." The court further directed all parties "to comply with its terms including any Court ordered amendments." Celia has timely appealed to this court.

## ASSIGNMENTS OF ERROR

Celia contends that the court erred in adopting the DHHS case plan as modified to require IFP when the case plan does not lead to the correction, elimination, or amelioration of the conditions leading to the adjudication.

Celia also assigns as error that the court erred in overruling her continuing objection during the State's case-in-chief. However, Celia did not argue this assignment of error in her brief. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014); *In re Interest of B.B. et al.*, 29 Neb. App. 1, 951 N.W.2d 526 (2020). Thus, we decline to consider this assignment of error.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Seth C.*, 307 Neb. 862, 951 N.W.2d 135 (2020).

## ANALYSIS

Restated, Celia's assignment of error is that the county court erred in adopting strategy 9 of the DHHS case plan requiring Celia and her family to participate in IFP when this strategy does not lead to the correction, elimination, or amelioration of the conditions leading to the adjudication, i.e. Carlos' truancy.

The Nebraska Juvenile Code must be liberally construed to accomplish its purpose of serving the best interests of the juveniles who fall within it. *In re Interest of T.T.*, 18 Neb. App. 176, 779 N.W.2d 602 (2009). Juvenile courts have broad discretion as to the disposition of those who fall within its jurisdiction as well as broad discretion to accomplish the purpose of serving the best interests of the children involved. *Id.*

A dispositional order imposing a rehabilitation plan for parents in a juvenile case is a final, appealable order. *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). Neb. Rev. Stat. § 43-285 (Supp. 2019) grants broad authority to juvenile courts to make orders which are in the best interests of juveniles under their jurisdiction. See *In re Interest of Paxton H.*, 300 Neb. 446, 915 N.W.2d 45 (2018). Further, a juvenile court has the discretionary power to prescribe a reasonable program for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code. *In re Interest of Rylee S.*, 285 Neb. 774, 829 N.W.2d 445 (2013). While there is no requirement that the juvenile court must institute a plan for rehabilitation of a parent, the rehabilitation plan must be conducted under the direction of the juvenile court and must be reasonably related to the plan's objective of reuniting parent with child. *Id.*

When DHHS presents a plan, as they did at the dispositional hearing in this case, "[t]he court may approve the plan, modify the plan, order that an alternative plan be developed, or implement another plan that is in the child's best interests." § 43-285(2)(c). In analyzing the reasonableness of a plan ordered by a juvenile court, the Nebraska Supreme Court has noted that the following question should be addressed:

> "Does a provision in the plan tend to correct, eliminate, or ameliorate the situation or condition on which the adjudication has been obtained under the Nebraska Juvenile Code? An affirmative answer to the preceding question provides the materiality necessary in a rehabilitative plan for a parent involved in proceedings within a juvenile court's jurisdiction. Otherwise, a court-ordered plan, ostensibly rehabilitative of the conditions leading to an adjudication under the Nebraska Juvenile Code, is nothing more than a plan for the sake of a plan, devoid of corrective and remedial measures. Similar to other areas of law, reasonableness of a rehabilitative plan for a parent depends on the circumstances in a particular case and, therefore, is examined on a case-by-case basis."

*In re Interest of Rylee S.*, 285 Neb. at 779, 829 N.W.2d at 449.

Juvenile courts have broad discretionary power to rehabilitate a parent, but not without limits. *In re Interest of Rylee S., supra*. If a juvenile court finds that certain strategies are necessary for parental rehabilitation in cases not involving custody, visitation, or termination of parental rights, the record should contain evidence sufficient to justify the need behind such order and how it will lead to correcting, eliminating, or ameliorating the issue presented. See *id*.

Here, Winkler's testimony demonstrated how requiring IFP as a strategy could ameliorate Carlos' truancy which led to his adjudication. Specifically, Winkler testified that, "[w]ith the IFP, they can help the family with creating routines to help alleviate the concerns [of] why we have this case, as well as with the therapy piece of it, potentially get to the underlying issues of why exactly we have this case," such as why Carlos had difficulty going to school or staying in school. Further, Winkler testified that IFP can help prepare a

game plan of what it will look like when Carlos is in school, what time he will go to bed, what time he'll wake up, how he will get to school, if he does have any more concerns with . . . bullying, what they plan to do about it. Pretty much just preparing themselves for the upcoming school year so that we don't have the same repeated concerns as the previous school year, which is why we have the case.

The aforementioned reasons, combined with Celia's unwillingness to participate in less intensive services such as FSS, establishes that inclusion of IFP in the case plan tends to correct, eliminate, or ameliorate the situation or condition on which the adjudication has been obtained, i.e. Carlos' truancy. That finding then provides the materiality necessary in the court-ordered rehabilitative plan for the parent involved in these proceedings.

Further, we reject Celia's claim that IFP was not correctly ordered as Carlos "would not be eligible to be enrolled in the IFP program" because Carlos did not meet DHHS' guidelines. Brief for appellant at 12. Pursuant to § 43-285(2)(c), the court has the authority to modify a case plan to include services regardless of whether DHHS has recommended them or what DHHS guidelines recommend as long as the case plan is in the child's best interests.

We also note that in her brief, Celia states that the family strength and needs assessment "was nothing more than a tool for a fishing expedition." Brief for appellant at 10. However, Celia did not object to the assessment when it was offered into evidence nor has she assigned as error on appeal the admission of the assessment into evidence. Having raised no objection to the assessment, she cannot be heard to complain of it now. See *In re Interest of Kindra S.*, 14 Neb. App. 202, 705 N.W.2d 792 (2005) (if, when evidence is offered, opposing party consents to its introduction or fails to object or to insist upon ruling on objection to introduction of such evidence, and otherwise fails to raise question of its admissibility, opposing party waives whatever objection may have existed, and evidence is in record for consideration same as other evidence).

Finally, we reject Celia's claim that the case plan improperly delegated the court's responsibility because it would shift the court's responsibilities onto the therapist and providers who "would be the ones who determine [Celia's] ultimate success." Brief for appellant at 13. Contrary to Celia's argument, a case plan for the rehabilitation of a parent must be conducted under the direction of the juvenile court and must be reasonably related to the plan's objective of reuniting parent with child. *In re Interest of Rylee S.*, 285 Neb. 774, 829 N.W.2d 445 (2013). Here, the case plan approved by the county court which invokes the assistance of the therapist and providers remains subject to, and was implemented under, the direction of the county court. Consequently, Celia's claim fails.

## CONCLUSION

Having considered and rejected Celia's claims, the county court's order is affirmed.

AFFIRMED.