assistance or other precautions. Summed up, this is a claim that the therapist negligently assessed her abilities and needs. For this reason, I concur in the judgment that this a professional negligence claim.

---

In re Interest of Rylee S., a child
under 18 years of age.
State of Nebraska, appellee, v.
Lisa S., appellant.
___ N.W.2d ___

Filed April 25, 2013.    No. S-12-531.

1. **Juvenile Courts: Parental Rights.** A juvenile court has the discretionary power to prescribe a reasonable program for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code.

2. ____: ____. While there is no requirement that the juvenile court must institute a plan for rehabilitation of a parent, the rehabilitation plan must be conducted under the direction of the juvenile court and must be reasonably related to the plan's objective of reuniting parent with child.

3. **Juvenile Courts: Appeal and Error.** In analyzing the reasonableness of a plan ordered by a juvenile court, the Nebraska Supreme Court has noted that the following question should be addressed: Does a provision in the plan tend to correct, eliminate, or ameliorate the situation or condition on which the adjudication has been obtained under the Nebraska Juvenile Code? An affirmative answer to this question provides the materiality necessary in a rehabilitative plan for a parent involved in proceedings within a juvenile court's jurisdiction. Otherwise, a court-ordered plan, ostensibly rehabilitative of the conditions leading to an adjudication under the Nebraska Juvenile Code, is nothing more than a plan for the sake of a plan, devoid of corrective and remedial measures.

4. **Juvenile Courts: Parent and Child.** Similar to other areas of law, reasonableness of a rehabilitative plan for a parent depends on the circumstances in a particular case and, therefore, is examined on a case-by-case basis.

5. **Juvenile Courts: Parental Rights: Child Custody: Visitation.** Pretreatment assessments, psychiatric testing, or psychological evaluations of a parent may be required to determine the best interests of a child when issues of custody, visitation, and termination of parental rights are presented.

6. **Juvenile Courts: Parental Rights.** Juvenile courts have broad discretionary power to rehabilitate a parent, but not without limits.

7. **Juvenile Courts: Parental Rights: Child Custody: Visitation: Evidence.** If a juvenile court finds that a pretreatment assessment and/or the release of medical records are necessary for parental rehabilitation in cases not involving custody,

visitation, or termination of parental rights, the record should contain evidence sufficient to justify the need behind such order and how it will lead to correcting, eliminating, or ameliorating the issue presented.

Appeal from the Separate Juvenile Court of Lancaster County: Toni G. Thorson, Judge. Reversed and remanded with directions.

Lea Wroblewski, of Legal Aid of Nebraska, for appellant.

Jon Bruning, Attorney General, and Sarah E. Sujith, Special Assistant Attorney General, for appellee.

Amy A. Miller for amicus curiae American Civil Liberties Union Foundation of Nebraska.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Cassel, JJ.

Heavican, C.J.

## INTRODUCTION

On April 4, 2012, the child, Rylee S., was adjudicated under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). As part of the adjudication, on May 16, appellant, Lisa S., Rylee's mother, was ordered by the juvenile court to complete a pretreatment assessment and to sign releases of information to allow the Nebraska Department of Health and Human Services (DHHS) an opportunity to access information from her therapist and treatment providers. Lisa appeals the reasonableness of the juvenile court's order. We reverse, and remand to the juvenile court with directions to amend the dispositional plan and order consistent with the findings of this opinion.

## FACTUAL BACKGROUND

Lisa is the biological mother of Rylee, age 16. Rylee has always been under Lisa's care and continues to be under her care pending this appeal. Rylee is nonverbal and autistic. Rylee's father is deceased.

The juvenile petition in this case was filed because Rylee was excessively absent from school during the 2010-11 and 2011-12 school years. After the petition was filed, Lisa self-reported to Rylee's school that Rylee refused to go to school.

Both the school and DHHS observed Rylee's being physically aggressive with himself and Lisa when she attempted to get him ready for school. Upon discovering that Lisa was not at fault regarding Rylee's excessive absences, the State accordingly amended its petition, placing no fault upon Lisa. On April 4, 2012, the juvenile court entered an order finding the allegations of the amended juvenile petition to be true and adjudicating Rylee as a child as defined by § 43-247(3)(a).

Subsequently, Lisa met with special education teachers at Rylee's school, Rylee's guardian ad litem (GAL), and DHHS to create a plan for Rylee to successfully attend school. One plan was to stop having Rylee take the bus to school, as he refused to get on the bus, and have Lisa personally drive him to school. This plan, however, failed when Rylee refused to get out of the car, locked himself inside, and damaged the inside of the car. On another occasion, Rylee physically assaulted Lisa outside of the school building. Rylee is otherwise cooperative and functions properly once inside the school.

While being interviewed by DHHS related to Rylee's adjudication, Lisa stated that she suffers from anxiety and anxiety attacks and is seeing a therapist. Lisa also stated that she is on medication to treat the condition. As a result of these statements, Lisa's DHHS child and family services specialist recommended a "pretreatment assessment to identify if Lisa would benefit from other services."

At Rylee's May 4, 2012, disposition hearing, Lisa's child and family services specialist did not appear. In her place was a new specialist who had been assigned to the case just 11 days prior to the hearing. Also present at the hearing were counsel for the State, counsel for Lisa, counsel for DHHS, and Rylee's GAL. At the hearing, Lisa testified that she suffers from anxiety and posttraumatic stress disorder and is seeking mental health treatment, which she felt was working.

During Lisa's testimony, the State asked Lisa whether she would be willing to sign releases of information to allow DHHS to review her treatment records in order to identify whether Lisa would benefit from other services. Lisa agreed to sign the releases. Later, to clarify what the State had asked of Lisa, counsel for Lisa asked Lisa alternatively if she would be

willing to sign a "limited" release to confirm with her mental health professionals that additional services are not necessary in her case. Lisa answered affirmatively to this question. At the end of the hearing, counsel for Lisa explained that such "limited" release would consist of a "yes" or "no" statement from Lisa's mental health professional as to whether Lisa was in need of additional help.

At the close of the evidence, counsel for DHHS asked the juvenile court to adopt its recommendations and to order the signing of releases as a modification or addition to its written recommendations. The DHHS case plan recommendation was a permanency objective of family preservation. The State and Rylee's GAL agreed with DHHS' recommendations. During closing arguments, there was extensive discussion between the juvenile court and legal counsel regarding the need for Lisa to have a pretreatment assessment and to sign the releases of information, as well as the appropriate scope of the releases. Counsel for Lisa objected to the need for Lisa to undergo a pretreatment assessment and to sign the releases of information. Lisa's counsel argued that because Lisa is currently treating with mental health professionals, she does not need further services for her issues. Further, counsel argued this would be "a huge breach of confidentiality and her privacy, particularly, if . . . [t]here may be information there that has nothing to do with Rylee" or Lisa's parenting abilities.

The juvenile court entered its dispositional order on May 16, 2012, adopting DHHS' recommendations and rehabilitation plan:

> [Lisa] shall participate in a pretreatment assessment. [Lisa] will sign releases of information to allow [DHHS] an opportunity to access information from [Lisa's] therapist and treatment providers to assist [DHHS] in determining what services would be most helpful to the mother in the effort to maintain Rylee . . . in the family home.

## ASSIGNMENTS OF ERROR

Lisa assigns, renumbered and restated, that the juvenile court erred in (1) ordering a rehabilitation plan that was

unreasonable and immaterial to the issues adjudicated as far as it ordered Lisa to (a) participate in a pretreatment assessment and (b) sign releases of information to allow DHHS an opportunity to access information from Lisa's therapist and treatment providers, and (2) violating the federal Health Insurance Portability and Accountability Act of 1996 by failing to limit the scope of the court-ordered releases of information.

## STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted on version of the facts over the other.[1]

## ANALYSIS

*Pretreatment Assessment and*
*Medical Releases.*

[1,2] Lisa assigns that the dispositional plan and subsequent order in this case were unreasonable, unrelated to the issues adjudicated, and not in Rylee's best interests insofar as they order her, the parent, to submit to a pretreatment assessment and sign releases of information to allow DHHS an opportunity to access information from her therapist and treatment providers.

> A juvenile court has the discretionary power to prescribe a reasonable program for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code. [Citations omitted.] While there is no requirement that the juvenile court must institute a plan for rehabilitation of a parent . . . the rehabilitation plan must be conducted under the direction of the juvenile court and must be reasonably related to the plan's objective of reuniting parent with child.[2]

---

[1] *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006).

[2] *In re Interest of C.D.C.*, 235 Neb. 496, 500, 455 N.W.2d 801, 805 (1990).

[3,4] In analyzing the reasonableness of a plan ordered by a juvenile court, this court has noted that the following question should be addressed:

> Does a provision in the plan tend to correct, eliminate, or ameliorate the situation or condition on which the adjudication has been obtained under the Nebraska Juvenile Code? An affirmative answer to the preceding question provides the materiality necessary in a rehabilitative plan for a parent involved in proceedings within a juvenile court's jurisdiction. Otherwise, a court-ordered plan, ostensibly rehabilitative of the conditions leading to an adjudication under the Nebraska Juvenile Code, is nothing more than a plan for the sake of a plan, devoid of corrective and remedial measures. Similar to other areas of law, reasonableness of a rehabilitative plan for a parent depends on the circumstances in a particular case and, therefore, is examined on a case-by-case basis.[3]

Lisa claims the court-ordered plan in this case is unreasonable because her statements to DHHS concerning her mental health needs were not requests for assistance. In fact, Lisa told DHHS that she felt the frequent and regular treatment she was receiving was adequate. Lisa asserts there is no evidence that her mental health is related to an adjudicated issue of this case. Therefore, she claims the juvenile court was unreasonable in ordering her to submit to a pretreatment assessment and sign releases of information to allow DHHS an opportunity to access her mental health information. Lisa further points out that she was not at fault in this case and that the court should have been concerned with whether the child's needs were being met, not with Lisa's needs. Furthermore, the evidence shows Lisa was fully cooperative with all services for Rylee and actively involved in trying to put services in place to help him get to school.

The material issue of this juvenile adjudication is Rylee's difficulty associated with getting to school, and the resulting truancy, caused by his diagnosis of nonverbal autism.

---

[3] *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 268, 417 N.W.2d 147, 158 (1987).

The question this court must address is whether having Lisa release all of her mental health records to DHHS and having her undergo a pretreatment assessment will tend to correct, eliminate, or ameliorate Rylee's difficulty with getting to school. In other words, we must decide if this is a reasonable rehabilitative plan for Lisa, the parent, depending on the circumstances of this particular case. We find it is not. The court-ordered rehabilitation plan in this case is unreasonable insofar as it orders Lisa to submit to a pretreatment assessment and sign releases of information to allow DHHS an opportunity to access her mental health information.

The record establishes that Lisa is a fit mother and has been fully cooperative in attempting to get Rylee to successfully attend school. Indeed, the State amended its petition recognizing Rylee's problems arise "through no fault" of Lisa, which the court's order also recognizes. Lisa has met and coordinated with all interested parties in this matter to help Rylee get to school. While this appeal has been pending, Lisa has essentially been ready, willing, and able to assist Rylee. We find no specific findings of fault by the juvenile court supporting this parental rehabilitation plan.[4]

Further, under our de novo review, we do not find sufficient evidence in the record suggesting that having Lisa release all of her mental health records to DHHS and undergo a pretreatment assessment will eliminate or contribute to eliminating Rylee's difficulties. There is a failure of proof in this case as to the relevancy of the State's request. There is neither a showing of need for parental rehabilitation nor a specific rehabilitative plan suggested, i.e., turning over Lisa's mental health records to DHHS and a pretreatment assessment. The plan does not correct the conditions underlying the adjudication that Rylee is a juvenile within § 43-247(3)(a) of the Nebraska Juvenile Code.

[5] We have held that pretreatment assessments, psychiatric testing, or psychological evaluations of a parent may be required to determine the best interests of a child when

---

[4] See *In re Interest of L.P. and R.P.*, 240 Neb. 112, 480 N.W.2d 421 (1992).

issues of custody, visitation, and termination of parental rights are presented.[5] However, this case is inherently distinct, for example, from the factual situations of cases wherein a pretreatment assessment, a psychological evaluation, or psychiatric testing for a parent was ordered by the juvenile court.[6] The circumstances of such cases encompassed instances of abuse and neglect where a child lacked proper care because of the faults and habits of the parent.[7] Here, no such issues are presented.

[6,7] Juvenile courts have broad discretionary power to rehabilitate a parent, but not without limits.[8] By deciding in the instant case that the juvenile court could not order the parent, who is not at fault, to submit to a pretreatment assessment or to release certain medical records, we are not hindering the juvenile court's discretion. If a juvenile court finds that a pretreatment assessment and/or the release of medical records are necessary for parental rehabilitation in cases not involving custody, visitation, or termination of parental rights, the record should contain evidence sufficient to justify the need behind such order and how it will lead to correcting, eliminating, or ameliorating the issue presented.

Based on the specific circumstances of this case, the juvenile court made no findings of fact sufficient to justify its order. Further, in our de novo review of the facts, we find no showing that such order tended to correct, eliminate, or ameliorate the situation on which this adjudication was obtained. Accordingly, we find that the dispositional plan and subsequent order in this case were unreasonable as far

---

[5] See *In re Interest of R.A. and V.A.*, 225 Neb. 157, 403 N.W.2d 357 (1987), *overruled on other grounds*, *State v. Jacob*, 242 Neb. 176, 494 N.W.2d 109 (1993).

[6] See, *In re Interest of J.S., S.C., and L.S.*, 224 Neb. 234, 397 N.W.2d 621 (1986); *In re Interest of S.P., N.P., and L.P.*, 221 Neb. 165, 375 N.W.2d 616 (1985); *In re Interest of Wood and Linden*, 209 Neb. 18, 306 N.W.2d 151 (1981).

[7] *Id.*

[8] See *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996).

as they require Lisa, the parent, to submit to a pretreatment assessment and sign releases of information to allow DHHS an opportunity to access information from her therapist and treatment providers.

*Limiting Scope of Court-Ordered*
*Releases of Information.*

In light of this finding, we do not address Lisa's second assignment of error in which she argues the juvenile court's order should be reversed because it violates the provisions of the federal Health Insurance Portability and Accountability Act of 1996.

## CONCLUSION

For the foregoing reasons, we find the decision of the juvenile court ordering Lisa to submit to a pretreatment assessment and sign releases of information to allow DHHS an opportunity to access her mental health information was unreasonable. We reverse, and remand to the juvenile court with directions to amend its dispositional plan and order consistent with the findings of this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

MILLER-LERMAN, J., participating on briefs.

CONNOLLY, J., concurring

I agree with the result of the majority opinion. But I disagree with the opinion's characterization of the juvenile court's disposition order as adopting a rehabilitation plan. It is true that the court adopted DHHS' recommendation to compel Rylee's mother to release her mental health records and cooperate with a "pretreatment assessment." But the order did not set out a rehabilitation plan.

Neb. Rev. Stat. § 43-288 (Reissue 2008) sets the contours of a rehabilitation plan. Under § 43-288, as a condition of a juvenile's placement in the parent's home, a court may order a parent to comply with statutorily specified requirements. The requirements that a court can impose include taking proper steps to ensure the juvenile's regular school attendance. But the "terms and conditions . . . shall relate to the acts or omissions of the juvenile, the parent, or other person responsible for the care of the juvenile *which constituted or contributed*

*to the problems which led to the juvenile court action in such case*." (Emphasis supplied.) Rylee's mother did not contribute to Rylee's missing school.

The State did not allege or prove that Rylee's mother was at fault for Rylee's school absences. Additionally, DHHS did not allege or prove that Rylee's mother had mental health issues that she must deal with to correct conditions leading to the adjudication. Instead, the evidence showed that Rylee's grandparents were also unable to get Rylee to school and that the mother had worked diligently to get Rylee help. The focus of DHHS' court report and the hearing was on providing services and treatment for *Rylee*.

Similarly, DHHS' court report did not recommend that the mother comply with a mental health assessment to correct conditions that led to the adjudication, such as conflicts in the home. Nor did the court's order require the mother to obtain a mental health assessment to correct conditions that led to the adjudication.

In my view, because the court did not order Rylee's mother to correct any conditions that led to the adjudication, the court did not order a rehabilitation plan. An order to release mental health records and cooperate with a pretreatment assessment, standing alone, is not a rehabilitation plan. The issue is not whether the court's rehabilitation plan was reasonable. The issue is whether the court can order a fishing expedition that is unrelated to any rehabilitation plan. The answer is no.

Additionally, the court's order requiring Rylee's mother to release her mental health records for the State's assessment raises substantial privacy concerns. A juvenile court can adjudicate a juvenile under the no-fault provision of Neb. Rev. Stat. § 43-247(3) (Reissue 2008) when a parent suffers from a diagnosed mental illness.[1] But that is not the case here. Instead, the no-fault adjudication was based solely on Rylee's mental health needs.

I cannot imagine a circumstance in which a court would properly order a parent to release his or her past mental health records in a no-fault adjudication based solely on the

---

[1] See *In re Interest of Constance G.*, 247 Neb. 629, 529 N.W.2d 534 (1995).

juvenile's mental health needs. I would agree that if the State presents evidence that a parent is not properly dealing with a child's mental health issues, a court could order the parent to comply with suitable therapy and require followup reports. But an order to release past mental health records so that the State can assess them is substantially different from requiring a parent to obtain mental health or substance abuse treatment or to participate in family therapy. This court has not previously addressed the privacy concerns raised by an order like this and need not do so now. But I believe an advisory opinion that such orders are within a juvenile court's discretion is inappropriate.