Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/19/2022 09:08 AM CDT

In re Interest of Marquee N., a child
under 18 years of age.
State of Nebraska, appellee, v.
Marquee N., appellant.

___ N.W.2d ___

Filed April 19, 2022.    No. A-21-687.

1. **Juvenile Courts: Evidence: Appeal and Error.** Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings; however, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other.

2. **Juvenile Courts: Parental Rights.** Neb. Rev. Stat. § 43-248(2) (Cum. Supp. 2020) allows the State to take a juvenile into custody without a warrant or order of the court when it appears the juvenile is seriously endangered in his or her surroundings and immediate removal appears to be necessary for the juvenile's protection. However, the parent retains a liberty interest in the continuous custody of his or her child.

3. **Parental Rights: Notice.** The State may not, in exercising its parens patriae interest, unreasonably delay in notifying a parent that the State has taken emergency action regarding that parent's child nor unreasonably delay in providing the parent a meaningful hearing.

4. **Appeal and Error.** On appeal, a party cannot complain of error which the party has invited the court to commit.

5. **Parental Rights: Child Custody.** The parental preference doctrine holds that in a child custody controversy between a biological parent and one who is neither a biological nor an adoptive parent, the biological parent has a superior right to the custody of the child.

6. **Parental Rights: Child Custody: Presumptions.** Under the parental preference doctrine, unless the State affirmatively shows a parent is unfit or has forfeited the right to custody, due regard for the parent's

- 863 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

natural right to the custody of a child requires that a parent be presumptively regarded as the proper guardian.

7. **Parental Rights: Child Custody: Proof.** Only exceptional circumstances involving proof of serious physical or psychological harm to the child or a substantial likelihood of such harm will negate the superior right of a fit parent who has not forfeited parental rights to custody under the parental preference doctrine.

8. **Juvenile Courts: Jurisdiction: Child Custody: Proof.** When the allegations of a petition for adjudication invoking the jurisdiction of the juvenile court are against one parent only, the State cannot deny the other parent's request for temporary physical custody in lieu of a foster care placement unless it pleads and proves by a preponderance of the evidence that the other parent is unfit or has forfeited custody or that there are exceptional circumstances involving serious physical or psychological harm to the child or a substantial likelihood of such harm.

9. **Parental Rights: Presumptions: Proof.** There is a rebuttable presumption that the best interests of a child are served by reuniting the child with his or her parent that is overcome only when the parent has been proved unfit.

10. **Child Custody: Parental Rights.** While the best interests of the child remain the lodestar of child custody disputes, a parent's superior right to custody must be given its due regard, and absent its negation, a parent retains the right to custody over his or her child.

11. ____: ____. A court may not deprive a parent of the custody of a child merely because the court reasonably believes that some other person could better provide for the child.

12. **Due Process: Notice.** Procedural due process generally requires that notice be given of such a nature as to reasonably convey the required information.

13. **Parental Rights: Child Custody: Notice.** In the context of denying parental preference in a placement decision during proceedings under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), reasonable notice must include the factual bases for seeking to prove that the parent is unfit or has forfeited parental rights or that exceptional circumstances exist involving serious physical or psychological harm to the child or a substantial likelihood of such harm.

14. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

15. **Juvenile Courts: Jurisdiction: Parental Rights: Proof.** If the pleadings and evidence at the adjudication hearing do not justify a juvenile court's acquiring jurisdiction of a child, then the juvenile court has no

- 864 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

jurisdiction, i.e., no power, to order a parent to comply with a rehabilitation plan, nor does the juvenile court have any power over the parent or child at the disposition hearing unless jurisdiction is alleged and proved by new facts at a new adjudication-disposition hearing.

16. **Juvenile Courts: Parental Rights.** After an adjudication under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) of the Nebraska Juvenile Code and before entering an order containing a rehabilitative plan for a parent, a juvenile court shall inform the juvenile's parent that the court may order a rehabilitative plan and thereafter shall hold an evidential hearing to determine reasonable provisions material to the parental plan's rehabilitative objective of correcting, eliminating, or ameliorating the situation or condition on which the adjudication has been obtained.

17. ____: ____. While there is no requirement that the juvenile court must institute a plan for rehabilitation of a parent, if it does, the rehabilitation plan must be conducted under the direction of the juvenile court and must be reasonably related to the plan's objective of reuniting parent with child.

18. **Juvenile Courts: Appeal and Error.** In analyzing the reasonableness of a plan ordered by a juvenile court, the question is whether a provision in the plan tends to correct, eliminate, or ameliorate the situation or condition on which the adjudication has been obtained. If it does not, a court-ordered plan is nothing more than a plan for the sake of a plan, devoid of corrective and remedial measures.

Appeal from the County Court for Lincoln County: Joel B. Jay, Judge. Vacated and remanded with directions.

Claire K. Bazata, of Berreckman & Bazata, P.C., L.L.O., for appellant.

Kortnei Smith, Deputy Lincoln County Attorney, for appellee.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

Riedmann, Judge.

INTRODUCTION

Marquee N., Sr. (Marquee Sr.), appeals the order of the county court for Lincoln County, sitting as a juvenile court, which continued placement of his minor child outside the home, declining to place the child with Marquee Sr., and

- 865 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

ordered Marquee Sr. to participate in drug testing. Upon our de novo review of the record, we vacate the court's order declining placement with Marquee Sr. and remand the cause with directions for further proceedings. We further vacate the portion of the order requiring participation in drug testing at this time.

## BACKGROUND

Marquee Sr. is the biological father of Marquee N., Jr. (Marquee Jr.), born in August 2015. On June 16, 2021, the State filed a petition seeking to adjudicate Marquee Jr. as a child under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). The petition alleged that on or about May 17 through June 16, Marquee Jr. was in a situation or engaged in an occupation dangerous to life or limb or injurious to his health or morals. That same day, the State filed an ex parte motion for temporary custody. The corresponding affidavit indicated that on May 17, the Nebraska Department of Health and Human Services (DHHS) received a report regarding the welfare of Marquee Jr. and his two siblings as it relates to their mother, Elizabeth C. The affidavit stated that a welfare check was conducted at Elizabeth's home on May 4 after law enforcement was contacted by Marquee Sr. who advised that he had been on a video visit with Marquee Jr. and observed marijuana on Elizabeth's kitchen table. Law enforcement responded to Elizabeth's home and found marijuana located on the kitchen table, where the children could access it. On June 7, Elizabeth took her children for hair follicle testing, and Marquee Jr.'s hair tested positive for methamphetamine and marijuana.

As to Marquee Sr., the affidavit alleged:

[Marquee] Sr. has a lengthy criminal history which includes convictions for 3rd Degree Domestic Assault (1st and 2nd Offense), Violation of Protection Order, and 3rd Degree Assault.

Both domestic assaults involved [Elizabeth] as the victim. During the first assault, [Elizabeth] was pregnant with Marquee Jr. During the second assault, which

- 866 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

occurred on July 6, 2016, [Marquee] Sr. punched [Elizabeth] repeatedly in the face while she was holding Marquee Jr. During the second assault, [Marquee] Sr. also slapped 4 year old [Marquee Jr.'s half sibling] in the face numerous times.

The juvenile court granted the ex parte motion, placing temporary custody of Marquee Jr. with DHHS. The order for temporary custody also ordered Marquee Sr. to submit to wearing a drug patch to be monitored by DHHS. A hearing was set for June 29, 2021.

At the hearing, the court advised Marquee Sr. of his rights, and he entered a denial to the allegations in the petition. He also requested a hearing on the continued detention and placement of Marquee Jr. A hearing was initially scheduled for July 9, but Marquee Sr. filed a motion to continue it because he needed additional time to obtain necessary evidence for the hearing. The matter was continued to August 4.

At the outset of the August 4, 2021, hearing, the parties clarified that the matter would proceed as a contested detention hearing with Marquee Sr. requesting that Marquee Jr. be placed in his home. The court received into evidence at the hearing an order dated June 28, 2021, from the district court for Lincoln County in a paternity case involving Marquee Sr. and Elizabeth. The district court's order sets forth the relevant procedural history, relating that in April 2017, the court entered a judgment of paternity, adjudicating Marquee Sr. as the biological father of Marquee Jr., awarded custody to Elizabeth subject to reasonable visitation of Marquee Sr., and ordered Marquee Sr. to pay child support. The June 28 order was entered in response to Elizabeth's motion to identify specific parenting time for Marquee Sr., which the district court granted, awarding him the first and third weekends of every month from Friday evening until Sunday evening and extended summer parenting time. The district court recognized, however, that between the time of trial on Elizabeth's motion in its case and entry of its order, the juvenile court had become involved with

- 867 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

the family; therefore, it stayed its order specifying parenting time pending the conclusion of the juvenile court action.

The DHHS initial assessment worker testified at the detention hearing that after Marquee Jr. was removed from Elizabeth's care, he inquired into placing him with Marquee Sr. At that time, however, there was an active protection order barring Marquee Sr. from the address he provided as his residence, and the alternative address he provided was a homeless shelter. The initial assessment worker explained that consequently, he was initially unable to place Marquee Jr. with Marquee Sr. The court received into evidence at the detention hearing a certified copy of a July 15, 2021, order from the district court for Lancaster County dismissing the protection order that had been issued against Marquee Sr. on February 5. Thus, at the time of the detention hearing on August 4, there was not an active protection order against Marquee Sr.

The initial assessment worker also explained that his background check on Marquee Sr. revealed two prior DHHS intakes involving domestic violence and a third intake that was not investigated. The first intake occurred in 2011 and was agency substantiated. The second intake involved the incident reported in the affidavit alleging that Marquee Sr. assaulted Elizabeth while she was holding Marquee Jr. The initial assessment worker acknowledged, however, that this intake, which occurred in 2016, was determined to be unfounded, meaning there was not enough evidence to support a finding by a preponderance of the evidence that the allegations were true.

As far as Marquee Sr.'s criminal history, the initial assessment worker testified that "there was domestic violence on his criminal history" and confirmed that Marquee Sr. has had convictions for domestic violence in the past. The initial assessment worker also found that three prior protection orders had been acquired against Marquee Sr.

The current DHHS caseworker, who took over the case from the initial assessment worker in July 2021, testified that Marquee Sr. has "multiple charges related to drugs and

- 868 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

alcohol or possession" on his record, but that the most recent charge was in 2009 for possession of marijuana and open alcohol container. She was asked whether that 12-year-old charge was concerning enough to require that Marquee Sr. wear a drug patch. She responded that Marquee Sr. was notified he could complete an "urgent needs assessment" and that to her knowledge, he had not done so, and without an urgent needs assessment to provide updated information, she affirmed that "it would be concerning at this time to me, yes." She acknowledged that she had no recent allegations or information about current drug use by Marquee Sr. The initial assessment worker likewise testified that he had not asked Marquee Sr. about any drug or alcohol use and confirmed that the allegations in the petition were solely against Elizabeth and did not relate to Marquee Sr. When the initial assessment worker was asked about requiring drug patch testing for Marquee Sr., he explained that "[w]hen children are removed due to drugs in the home, all parents [are] put on patch testing."

After Marquee Jr. was removed from Elizabeth's care, he was placed with his two half siblings in the home of his maternal grandmother. The initial assessment worker acknowledged that since the time of removal, he had not visited Marquee Sr.'s home, had not sent any other workers to visit the home, and had not made contact with Marquee Sr.'s live-in fiance. He also had not completed a safety assessment on Marquee Sr. because the allegations in the case related solely to Elizabeth.

The current caseworker also admitted that she had not talked to Marquee Sr. in person or on the phone, had not spoken to his fiance, had not asked a courtesy worker to visit him or interview him, had not spoken to anyone in his family, and was unaware whether he was employed. Nevertheless, she opined that she would not even recommend allowing Marquee Sr. in-person visits with Marquee Jr. until she could speak with Marquee Sr. "and discuss his case as far as his family strengths and needs assessment, which would help build [the] case plan." In addition, both she and the initial assessment worker

- 869 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

opined that placing Marquee Jr. with Marquee Sr. was not in the child's best interests at that time.

In an order filed that same day, the juvenile court found that Marquee Jr.'s care, custody, and control should continue with DHHS for out-of-home placement. The court ordered Marquee Sr. to begin drug patch testing and to complete an urgent needs assessment. Marquee Sr. was awarded supervised visitation with Marquee Jr. In an order dated August 10, 2021, the court found that reasonable efforts had been made to return Marquee Jr. to his home and that it would be in his best interests that he be placed in the care, custody, and control of DHHS, and it ordered that he remain in his current foster placement. Marquee Sr. appeals.

During the pendency of the appeal, the State filed a motion to dismiss the appeal as moot because Marquee Jr. had been placed with Elizabeth, over Marquee Sr.'s objection. We denied the motion to dismiss. Counsel for Marquee Sr. confirmed at oral argument that Marquee Jr. was currently placed with Elizabeth.

## ASSIGNMENTS OF ERROR

Marquee Sr. assigns, renumbered, that the juvenile court erred in (1) failing to timely hold an evidentiary hearing regarding the removal of Marquee Jr. in violation of Marquee Sr.'s right to due process, (2) failing to return Marquee Jr. to him when no allegations had been made regarding his care of the child, (3) finding that reasonable efforts had been made to preserve and reunify the family, and (4) failing to afford him due process prior to ordering him to submit to wearing a drug test patch.

## STANDARD OF REVIEW

[1] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings; however, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and

- 870 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

accepted one version of the facts over the other. *In re Interest of A.A. et al.*, 307 Neb. 817, 951 N.W.2d 144 (2020).

## ANALYSIS

*Timeliness of Initial Hearing.*

Marquee Sr. assigns that the juvenile court failed to timely hold an evidentiary hearing regarding the continued detention of Marquee Jr. in violation of Marquee Sr.'s right to due process. Because the hearing date was continued upon Marquee Sr.'s request, we find no error in its timeliness.

[2,3] Neb. Rev. Stat. § 43-248(2) (Cum. Supp. 2020) allows the State to take a juvenile into custody without a warrant or order of the court when it appears the juvenile "is seriously endangered in his or her surroundings and immediate removal appears to be necessary for the juvenile's protection." However, the parent retains a liberty interest in the continuous custody of his or her child. *In re Interest of Kane L. & Carter L.*, 299 Neb. 834, 910 N.W.2d 789 (2018). An ex parte order authorizing temporary custody with DHHS is permitted because of its short duration and the requirement of further action by the State before custody can be continued. *Id*. But the State may not, in exercising its parens patriae interest, unreasonably delay in notifying a parent that the State has taken emergency action regarding that parent's child nor unreasonably delay in providing the parent a meaningful hearing. *Id*. Therefore, following the issuance of an ex parte order for temporary immediate custody, a prompt detention hearing is required in order to protect the parent against the risk of an erroneous deprivation of his or her parental interests. *Id*. At the detention hearing, the State must prove by a preponderance of the evidence that continuation of the juvenile in his or her home would be contrary to the juvenile's welfare. See *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), *disapproved on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998).

In *In re Interest of R.G., supra*, the Nebraska Supreme Court recognized that parents have a due process right to be free

- 871 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

from an unreasonable delay in providing the parents a meaningful hearing after an ex parte order for immediate custody is filed. The court concluded that the mother's due process rights were not violated by a 14-day delay between the entry of an ex parte order and that of a detention order when she was given an opportunity to be heard at the detention hearing and was allowed to visit her children in the interim. But the court cautioned that this 14-day delay between the ex parte order and detention hearing was "on the brink of unreasonableness." *Id*. at 423, 470 N.W.2d at 792.

In the present case, the ex parte temporary detention order was entered on June 16, 2021, and the initial appearance occurred on June 29. At that time, however, the juvenile court declined to hold an evidentiary hearing and set the matter to receive evidence related to continued detention and placement of Marquee Jr. for July 9. Thus, the court did not intend to hold an evidentiary detention hearing until 23 days after the ex parte order was entered. This is 9 days beyond the timeframe the Supreme Court labeled the "brink of unreasonableness."

[4] However, the July 9, 2021, hearing was continued to August 4 on Marquee Sr.'s motion. He asked for a continuance because he needed additional time to obtain evidence necessary for the hearing. On appeal, a party cannot complain of error which the party has invited the court to commit. *Mahlendorf v. Mahlendorf*, 308 Neb. 202, 952 N.W.2d 923 (2021). Because Marquee Sr. asked that the hearing be continued, we cannot predicate error on its timeliness.

*Placement of Marquee Jr.
and Reasonable Efforts.*

Marquee Sr. argues that the juvenile court erred in refusing to place Marquee Jr. with him because the State failed to affirmatively show that he was unfit. We agree that the State failed to meet its burden of proving that he was unfit. Therefore, the parental preference doctrine required that the court place Marquee Jr. with Marquee Sr.

- 872 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

[5-7] The Supreme Court has held in situations where a child is removed from one parent's home pursuant to the juvenile code that the juvenile court's discretion regarding placement pending disposition is limited by Nebraska's "'parental preference doctrine,'" which governs the rights of the other parent against whom no allegations have been made. *In re Interest of A.A. et al.*, 307 Neb. 817, 845, 951 N.W.2d 144, 167 (2020). The parental preference doctrine holds that in a child custody controversy between a biological parent and one who is neither a biological nor an adoptive parent, the biological parent has a superior right to the custody of the child. *Id*. Under the parental preference doctrine, unless the State affirmatively shows a parent is unfit or has forfeited the right to custody, due regard for the parent's natural right to the custody of a child requires that a parent be presumptively regarded as the proper guardian. *Id*. Only exceptional circumstances involving proof of serious physical or psychological harm to the child or a substantial likelihood of such harm will negate the superior right of a fit parent who has not forfeited parental rights to custody under the parental preference doctrine. *Id*.

[8] Our case law is clear that when the allegations of a petition for adjudication invoking the jurisdiction of the juvenile court are against one parent only, the State cannot deny the other parent's request for temporary physical custody in lieu of a foster care placement unless it pleads and proves by a preponderance of the evidence that the other parent is unfit or has forfeited custody or that there are exceptional circumstances involving serious physical or psychological harm to the child or a substantial likelihood of such harm. *Id*. But see, *In re Interest of Lakota Z. & Jacob H.*, 282 Neb. 584, 804 N.W.2d 174 (2011) (requiring clear and convincing evidence that biological or adoptive parent either is unfit or has forfeited his or her right to custody in proceeding to terminate guardianship); *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004) (parental unfitness must be shown by clear and convincing evidence to overcome parental preference principle

- 873 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

in proceeding to terminate guardianship). There are no allegations in the present case that Marquee Sr. forfeited his right to custody or that there are any of the requisite exceptional circumstances. Therefore, the State was required to prove that Marquee Sr. was unfit in order to deprive him of the custody of his child.

We note that at the detention hearing, the State placed its focus on Marquee Jr.'s best interests. Both the initial assessment worker and current caseworker opined that placing Marquee Jr. with Marquee Sr. at that time was not in the child's best interests, and in its arguments to the court, the guardian ad litem likewise expressed concern about moving the child from his current placement with his grandmother and siblings, arguing that allowing Marquee Jr. to remain in his current placement was in his best interests. However, this type of analysis does not come into play until after there has been a finding of parental unfitness or forfeiture. See *In re Interest of Lakota Z. & Jacob H., supra*.

[9] Although the name of the best interests of the child standard may invite a different intuitive understanding, the standard does not require simply that a determination be made that one environment or set of circumstances is superior to another. *Id*. Rather, the best interests standard is subject to the overriding recognition that the relationship between parent and child is constitutionally protected. *Id*. There is a rebuttable presumption that the best interests of a child are served by reuniting the child with his or her parent that is overcome only when the parent has been proved unfit. *Id*. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the parent has been proved unfit or there has been a forfeiture. See *id*.

[10,11] Additionally, while the best interests of the child remain the lodestar of child custody disputes, a parent's superior right to custody must be given its due regard, and absent its negation, a parent retains the right to custody over his or her child. *In re Guardianship of D.J., supra*. In other words,

- 874 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

a parent retains the right to custody unless it is proved that the parent is unfit or has forfeited his or her right to custody. A court may not deprive a parent of the custody of a child merely because the court reasonably believes that some other person could better provide for the child. *In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 903 N.W.2d 651 (2017). Stated another way, "the fact that the State considers certain prospective adoptive parents 'better' [does not] overcome the constitutionally required presumption that reuniting with [a parent] is best." *In re Interest of Xavier H.*, 274 Neb. 331, 350, 740 N.W.2d 13, 26 (2007). The court has never deprived a parent of the custody of a child merely because on financial or other grounds a stranger might better provide. *Id.*

Thus, in the instant case, the initial question is not whether the child's best interests are served by remaining in his current placement because it would be "better" for him, but, rather, whether the presumption that his best interests are served by reuniting with Marquee Sr. has been rebutted by sufficient evidence that Marquee Sr. is unfit. See *id.* As noted above, there are no allegations that Marquee Sr. forfeited his right to custody, and the juvenile court made no such finding. Accordingly, we must determine whether the State presented sufficient evidence to prove that he was unfit.

[12,13] Prior to the evidentiary detention hearing, however, the State was required to give Marquee Sr. notice that it was challenging his fitness. Procedural due process generally requires that notice be given of such a nature as to reasonably convey the required information. *In re Interest of A.A. et al.*, 307 Neb. 817, 951 N.W.2d 144 (2020). In the context of denying parental preference in a placement decision during proceedings under § 43-247(3)(a), reasonable notice must include the factual bases for seeking to prove that the parent is unfit or has forfeited parental rights or that exceptional circumstances exist involving serious physical or psychological harm to the child or a substantial likelihood of such harm. *In re Interest of A.A. et al., supra*. While as to the parent from whose home

- 875 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

the child was removed, such notice is ordinarily contained in the petition for adjudication, allegations as to the fault or habits of the custodial parent do not operate to give notice to the non-custodial parent that the State seeks to rebut that parent's right to parental preference in its placement decisions. *Id*.

Here, the petition did not assert any allegations of unfitness against Marquee Sr.; rather, the allegations were vague and general, but the parties understood that they related only to drug possession and use by Elizabeth. The initial assessment worker confirmed this at the detention hearing. Therefore, the petition itself did not place Marquee Sr. on notice that the State intended to rebut the presumption of his parental fitness.

In his brief, Marquee Sr. relays information contained in the affidavit the State filed in support of the ex parte temporary detention order. We note that a copy of this affidavit was offered and received into evidence at a July 6, 2021, hearing, but the record establishes that neither Marquee Sr. nor his counsel were present at the hearing because the issues being addressed related solely to Elizabeth. Despite this, because Marquee Sr. relies on the affidavit in his arguments as to this issue, we assume he received a copy of it prior to the detention hearing, and we assume, without deciding, that this was sufficient to place him on notice that the State was seeking to prove that he was unfit for placement of Marquee Jr. Because reasonable notice must include the factual bases for seeking to prove that the parent is unfit, the grounds upon which the State could establish Marquee Sr.'s unfitness were limited to those raised in the affidavit.

The affidavit alleged that Marquee Sr. "has a lengthy criminal history," including convictions for domestic assault, violation of a protection order, and third degree assault. It further alleged that both domestic assaults involved Elizabeth as the victim and that during the first assault, she was pregnant with Marquee Jr. The affidavit asserted that during the second assault, Marquee Sr. punched Elizabeth repeatedly in the face while she was holding Marquee Jr. and also

- 876 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

slapped Marquee Jr.'s then 4-year-old sibling. From this language, we conclude that the State was limited to proving that Marquee Sr. was unfit due to his criminal history of assaultive behavior.

As to the specific allegations contained in the affidavit, evidence was offered to support only generalized past domestic violence convictions. No evidence was offered to support the allegation that Marquee Sr. had specifically been convicted of third degree domestic assault (first and second offense), violation of a protection order, or third degree assault.

The evidence regarding Marquee Sr.'s domestic assault convictions came from the initial assessment worker who testified that "there was domestic violence on his criminal history," and he confirmed that Marquee Sr. "has had convictions for domestic violence in the past." No additional information such as dates of any convictions, specific crimes, or number of offenses was offered.

Although the affidavit provided detail regarding "[b]oth domestic assaults" which we presume relate to the allegation of a conviction for "3rd Degree Domestic Assault (1st and 2nd Offense)," no evidence of a conviction was offered. Rather, the initial assessment worker explained that his background check on Marquee Sr. revealed two prior intakes to DHHS that alleged domestic violence, but only one was agency substantiated. That incident occurred in 2011, before either Marquee Jr. or his siblings were born and is not referenced in the affidavit. The other intake to DHHS was described in the affidavit as one of the domestic assaults, and the affidavit reported that Marquee Sr. assaulted Elizabeth while she was holding Marquee Jr. in 2016. The initial assessment worker explained, however, that this intake was determined to be unfounded, meaning there was not enough evidence to support a finding by a preponderance of the evidence that the allegations were true. No evidence was provided as to the "first assault" described in the affidavit which allegedly occurred when Elizabeth was pregnant with Marquee Jr.

- 877 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

As stated above, there was no evidence that Marquee Sr. was convicted of violating a protection order; in fact, there was no evidence that he had ever violated one. The initial assessment worker testified to "finding" three protection orders in which Marquee Sr. was the respondent, but no dates were provided, nor was there testimony that they had been violated. The initial assessment worker testified that he was originally unable to place Marquee Jr. with Marquee Sr. because there was a protection order prohibiting Marquee Sr. from the address he provided as his residence and the alternative address he provided was a homeless shelter. However, the evidence proved that that protection order had been dismissed and was no longer in effect at the time of the detention hearing. In fact, the alleged victim attended the detention hearing and was introduced to the court as Marquee Sr.'s fiance.

Separate from the allegations in the affidavit, the State offered evidence to prove Marquee Sr.'s unfitness on other grounds, including the 2011 intake to DHHS which was agency substantiated; the previous protection orders; whether Marquee Sr. participated in the visitation that had been offered thus far in the case; whether he was complying with the drug patch that the court ordered in its temporary order; previous drug or alcohol charges, with the most recent occurring in 2009; statements Marquee Jr. made referring to Marquee Sr.'s hitting him in the nose on one occasion or hitting women; and Marquee Sr.'s refusing to return Marquee Jr. to Elizabeth for several months in the summer of 2020. Because Marquee Sr. did not have notice that the State would be seeking to prove his parental unfitness on these bases, however, we do not consider them for whatever evidentiary value they may have had.

Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being. *In re Interest of A.A. et al.*, 307 Neb. 817, 951 N.W.2d 144 (2020). The Supreme Court has analogized the

- 878 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

quantum of proof necessary to prove unfitness to the proof necessary to terminate parental rights, reasoning that "'[i]f the evidence of unfitness is insufficient to justify termination of parental rights in an action maintained under the Nebraska Juvenile Code,'" then "'similarly deficient evidence of parental unfitness'" would prevent a court from granting child custody "'to one who is a stranger to the parent-child relationship.'" *In re Interest of Lakota Z. & Jacob H.*, 282 Neb. 584, 594, 804 N.W.2d 174, 182 (2011).

The evidence in the record related to Marquee Sr.'s unfitness as a parent, and for which he had notice, includes only the initial assessment worker's testimony that Marquee Sr. has prior convictions for domestic violence crimes. The evidence to the contrary establishes that a district court originally granted Marquee Sr. parenting time with Marquee Jr. in 2017, which he routinely exercised, and clarified his parenting time during the pendency of this case, and that there were no concerns raised in the context of that case related to Marquee Sr.'s fitness as a parent such that there were any limitations placed on his parenting time, like supervision. We conclude that the totality of this evidence, without more, would be insufficient upon which to terminate Marquee Sr.'s parental rights for unfitness, and therefore, it is insufficient to overcome the presumption of his parental fitness.

Even if we consider the evidence of which Marquee Sr. had no notice, we remain unconvinced that the State met its burden of proving him unfit. The evidence lacks necessary details outlining what crimes Marquee Sr. has been charged with, whether he was convicted of any of those crimes, and when any convictions occurred. Further, the initial intake worker alluded to protection orders having been acquired against Marquee Sr. in the past, but again, he did not specify when they occurred or whether they were ultimately dismissed as was the most recent order. There was no evidence offered to support the allegation in the affidavit that Marquee Sr. had ever violated a protection order. We understand the juvenile court's concerns

- 879 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

of a parent with a history of domestic violence; however, we cannot find that the evidence in our record is sufficient to overcome the constitutionally required presumption of parental preference.

Without sufficient evidence proving that Marquee Sr. was unfit, the parental preference doctrine required placement of Marquee Jr. with Marquee Sr. Accordingly, we vacate the juvenile court's order denying placement of Marquee Jr. with Marquee Sr. and impliedly finding him unfit, and we remand the cause with directions for further proceedings. However, during the pendency of this appeal, Marquee Jr. was removed from his foster home and placed with Elizabeth. Therefore, upon remand, the issue before the juvenile court is not placement of the child as between the State and a parent, but rather placement of the child as between two parents.

[14] Having vacated the court's decision declining to place Marquee Jr. with Marquee Sr., we need not address his argument that the court erred in finding that reasonable efforts had been made to preserve and reunify the family. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *In re Adoption of Yasmin S.*, 308 Neb. 771, 956 N.W.2d 704 (2021).

*Order for Drug Testing.*

Marquee Sr. also argues that the juvenile court erred in ordering him to submit to drug testing by wearing a drug patch to be monitored by DHHS. We agree that these orders were erroneous but for reasons different from those Marquee Sr. raises here.

On June 16, 2021, the State filed the petition alleging that Marquee Jr. was a child within the meaning of § 43-247(3)(a), along with the ex parte motion for temporary custody. That same day, the juvenile court entered the order granting temporary custody of Marquee Jr. to DHHS. The court further ordered Marquee Sr. "to submit to wearing a drug patch to be monitored and paid for by [DHHS]." In the August 4 order,

- 880 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

the court again ordered that Marquee Sr. begin "patch testing." On August 10, the court found that Marquee Jr. came within the meaning of § 43-247(3)(a) after Elizabeth did not contest the allegations of the petition.

The court's requirement that Marquee Sr. wear a drug patch is erroneous for two reasons. First, prior to adjudicating a child under § 43-247(3)(a), the court lacks jurisdiction over the parties. When a juvenile court adjudicates a minor under § 43-247(3), it also obtains exclusive jurisdiction over the parent, or stated another way, an adjudication under the Nebraska Juvenile Code brings all the parties identified in § 43-247(3) and (5) under the juvenile court's exclusive jurisdiction. See *In re Interest of Devin W. et al.*, 270 Neb. 640, 707 N.W.2d 758 (2005). Thus, the juvenile court acquires jurisdiction over a juvenile and his parents when it finds conditions that fit § 43-247(3)(a) and adjudicates the child as a juvenile within the meaning of § 43-247(3)(a). See *In re Interest of Devin W. et al., supra*.

[15] If the pleadings and evidence at the adjudication hearing do not justify a juvenile court's acquiring jurisdiction of a child, then the juvenile court has no jurisdiction, i.e., no power, to order a parent to comply with a rehabilitation plan, nor does the juvenile court have any power over the parent or child at the disposition hearing unless jurisdiction is alleged and proved by new facts at a new adjudication-disposition hearing. *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992). See, also, Christine P. Costantakos, Juvenile Court Law and Practice § 3:4 (2021) (where no adjudication has taken place, court has no authority to order parent to participate in plan of rehabilitation, or to fulfill any other requirement or affirmative duty such as submit to psychological or psychiatric evaluation, drug screens, or chemical dependency evaluation).

This court has previously observed that § 43-247 does not grant the juvenile court jurisdiction over the parent, guardian, or custodian of a juvenile who has merely been *alleged* to be within the ambit of § 43-247; rather, the juvenile court does

- 881 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

not obtain jurisdiction over a juvenile's parent, guardian, or custodian until a finding of adjudication. See *In re Interest of Meley P.*, 13 Neb. App. 195, 689 N.W.2d 875 (2004). In *In re Interest of Meley P.*, the juvenile court entered an order continuing temporary custody of the child with DHHS after holding a detention hearing but prior to adjudication. In that temporary order, the court also ordered that the parents have no contact with each other due to a history of domestic violence. On appeal, we found that although the State had alleged that the child was a child within the meaning of § 43-247(3)(a), there had not yet been a finding of adjudication. Thus, the juvenile court lacked jurisdiction over the parents at the time the temporary order was entered, and we reversed the provision prohibiting contact between them.

Accordingly, because the adjudication is the operative event that confers jurisdiction of the court over the parents and the children, prior to the adjudication, the juvenile court has no authority to order the parents to participate in services or to submit to treatment. See Costantakos, *supra*, § 2:2. Therefore, at the time the juvenile court in this case entered the temporary detention order and the August 4, 2021, order, both of which occurred prior to entry of an order adjudicating Marquee Jr. under § 43-247(3)(a), it had no authority to order Marquee Sr. to wear a drug patch.

In addition, the court's orders requiring Marquee Sr. to wear a drug patch were made without notice to him that the court may order services and without holding an evidentiary hearing regarding the propriety of any services. Further, the orders were made without any evidence that this provision was reasonably related to the condition on which the allegations in the petition were based.

[16] The Supreme Court has announced a procedural rule requiring a juvenile court to hold a hearing before entering an order containing a rehabilitative plan for a parent:

> [A]fter an adjudication under § 43-247(3)(a) of the Nebraska Juvenile Code and before entering an order

- 882 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

containing a rehabilitative plan for a parent, a juvenile court shall inform the juvenile's parent that the court may order a rehabilitative plan and thereafter shall hold an evidential hearing to determine reasonable provisions material to the parental plan's rehabilitative objective of correcting, eliminating, or ameliorating the situation or condition on which the adjudication has been obtained.

*In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 272-73, 417 N.W.2d 147, 161 (1987). Fundamental fairness requires the adducing of appropriate evidence as a factual foundation for a rehabilitative plan which eventually may be used as a ground or condition for termination of parental rights. *Id*.

[17,18] Furthermore, while there is no requirement that the juvenile court must institute a plan for rehabilitation of a parent, if it does, the rehabilitation plan must be conducted under the direction of the juvenile court and must be reasonably related to the plan's objective of reuniting parent with child. See *In re Interest of Rylee S.*, 285 Neb. 774, 829 N.W.2d 445 (2013). In analyzing the reasonableness of a plan ordered by a juvenile court, the question is whether a provision in the plan tends to correct, eliminate, or ameliorate the situation or condition on which the adjudication has been obtained. See *id*. If it does not, a court-ordered plan "'is nothing more than a plan for the sake of a plan, devoid of corrective and remedial measures.'" *Id*. at 779, 829 N.W.2d at 449.

In *In re Interest of J.S., A.C., and C.S., supra*, the State filed a petition in January 1985, alleging that the children came within the meaning of § 43-247(3)(a). During the pendency of the case, one of the rehabilitative plan requirements was that the mother attend Alcoholics Anonymous meetings, despite the fact that the caseworker never saw the mother take a drink of alcohol, detected no odor of alcohol on her, and saw no alcohol in her home. The mother had never been evaluated for alcoholism or diagnosed as an alcoholic, and there was no professional recommendation that she undergo any course of treatment for alcoholism or take action for an alcohol-related problem.

- 883 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

According to the caseworker, the mother had some unidentified alcohol problem in the past, "'[t]hat was like 1977, so it was a long time back.'" *In re Interest of J.S., A.C., and C.S.*, 227 Neb. at 260, 417 N.W.2d at 154.

On appeal, the Supreme Court held that the requirement concerning the Alcoholics Anonymous meetings failed to meet the test for materiality necessary in a rehabilitative plan. The court did not dispute that everyone should be fully informed about alcohol's nature and the abuse of alcohol. However, a requirement that a parent obtain such knowledge as a condition to retaining parental rights, when the parent has no alcohol-related problem, appeared to be a "somewhat draconian dictate." *Id*. at 271, 417 N.W.2d at 160. The court concluded that under the circumstances, the mother's attendance at Alcoholics Anonymous meetings was immaterial to the correction, elimination, or amelioration of a condition which resulted in the adjudication and, therefore, was irrelevant in the termination proceedings.

Likewise, here, there have been no allegations or evidence presented that Marquee Sr. has a drug problem or that drug testing would correct, eliminate, or ameliorate a condition that resulted in adjudication. The initial assessment worker acknowledged that the drug-related allegations in the petition were solely as to Elizabeth and that he had no specific allegations with respect to Marquee Sr. using drugs. The caseworker testified that her background check on Marquee Sr. revealed "multiple charges related to drugs and alcohol or possession" but that the most recent charge was in 2009 for possession of marijuana and having an open container of alcohol.

We note that the caseworker referred to "charges" and not "convictions," so the record is not clear as to whether Marquee Sr. has ever been convicted of any drug or alcohol-related offenses. Regardless, the evidence shows that the most recent charge occurred in 2009, 12 years prior to the detention hearing. Although the order for a drug patch was contained in an ex parte temporary detention order and not a rehabilitation

- 884 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF MARQUEE N.
Cite as 30 Neb. App. 862

plan, we find it comparable to *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987). There, the Supreme Court did not find that a 7-year-old unidentified alcohol problem would indicate a current alcohol problem, and we, too, do not find that a 12-year-old drug charge, alone, would indicate a current drug problem necessitating drug testing as a condition of Marquee Sr.'s reunifying with his child.

In addition, the conditions that led to removing Marquee Jr. from the home and the filing of the petition seeking adjudication were drug use and possession by Elizabeth. The petition did not contain any allegations against Marquee Sr. Thus, on this record, ordering Marquee Sr. to participate in drug testing will not remedy the condition that led to removal.

In short, the juvenile court lacked jurisdiction over Marquee Sr. at the time it ordered him to wear a drug patch because Marquee Jr. had not yet been adjudicated under § 43-247(3)(a). The court, therefore, had no authority to order him to participate in services at that time. Additionally, the court required that Marquee Sr. submit to drug testing without notice that it was contemplating doing so or holding an evidentiary hearing, at which to receive evidence that this requirement was appropriate and necessary. Finally, there was no evidence that this service was material to the allegations in the petition. We therefore vacate the provision requiring Marquee Sr. to wear a drug patch at this stage of the litigation.

## CONCLUSION

We vacate the juvenile court's order declining to place temporary physical custody of Marquee Jr. with Marquee Sr. and remand the cause with directions for further proceedings consistent with this opinion. In addition, we vacate the provision that Marquee Sr. wear a drug patch.

Vacated and remanded with directions.